**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK J. BURNS, III<br><br>                                      Plaintiff,<br><br>v.<br><br>CITY OF BAYONNE, et al.,<br><br>                                      Defendants. | Civil Action No.: 12-6075 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of five motions to dismiss Plaintiff Patrick J. Burns, III's ("Plaintiff" or "Sgt. Burns") Complaint under Federal Rule of Civil Procedure 12(b)(6). (CM/ECF Nos. 28- 32). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. The Court has considered the submissions and arguments made in support of and in opposition to the instant motions. For the reasons set forth below, Defendants' motions are GRANTED.

## I. BACKGROUND[1]

On September 27, 2012, Sgt. Burns filed suit against the following defendants: (1) the City of Bayonne (the "City"); (2) the Bayonne Police Department ("BPD"); (3) Mark Smith, former Director of Public Safety and current Mayor of the City of Bayonne and supervisor of Plaintiff ("Mayor Smith") (Compl. ¶ 6); (4) Plaintiff's direct supervisor, BPD Chief Robert

---

[1] As discussed more fully below, a number of the factual allegations contained in the Complaint fall well outside of the applicable statute of limitations. For example, some of the alleged events occurred over a decade ago, whereas the applicable statute of limitations is two years. Accordingly, the Court will not address those allegations in detail.

1

Kubert ("Chief Kubert") (Compl. ¶ 7); (5) Captain Peter Nevins, an officer with the BPD and Captain of the Internal Affairs Division ("Capt. Nevins") (Compl. ¶ 8); (6) Lieutenant Timothy Farrell, an officer with the BPD and a member of the Internal Affairs Division ("Lt. Farrell") (Compl. ¶ 9); (7) Officer William Kobryn, a member of the BPD and President of the Bayonne Chapter of the PBA ("Officer Kobryn") (Compl. ¶ 10); (8) Captain Thomas Murphy, an officer with the BPD ("Capt. Murphy") (Compl. ¶ 11); (9) Director of Public Safety Jason O'Donnell (Compl. ¶ 12); and (10) John Does 1-10.

As per Plaintiff's Complaint, this action arises out of the alleged "illegal discharge" of Plaintiff Burns from his position as a Sergeant with the BPD. (CM/ECF No. 1 ¶ 1) ("Compl."). The Complaint alleges that as of 1995, when Plaintiff began working for the BPD, he was subject to physical and verbal abuse because of his physical stature – he is approximately 5'3" tall and weighs approximately 135 lbs. (Compl. ¶¶ 16-18). Plaintiff further alleges that Defendants "attempted to mask the true motivations for their actions through the advancement of unsubstantiated and meritless charges designed to injure [Plaintiff], his career, his reputation, his family and his personal life." (*Id.*). There were two instances where Plaintiff alleges that he was improperly terminated. (*Id.*).

With regard to the first, the decision to terminate Plaintiff was reversed on appeal and the Honorable JoAnn LaSala Candido, A.L.J. ordered that Plaintiff be reinstated with full back pay and seniority and reimbursement of insurance premiums. (Compl. ¶¶ 1, 86). The Civil Service Commission affirmed Judge Candido's decision and ordered the City to reinstate Plaintiff within ten days or be subject to a fine. (Compl. ¶¶ 90-91). However, Plaintiff alleges that he was nevertheless not timely reinstated or timely given back pay, and that to date he has been refused six months of required pension payments. (Compl. ¶¶1,92-97).

Secondly, Plaintiff alleges that within two months of his reinstatement pursuant to Judge Candido's Order, the BPD brought "unsubstantiated and meritless charges again designed to injure" Plaintiff's livelihood, family and personal life. (*Id.*) The incident allegedly involved a motor vehicle chase where the driver "was a drug distributor who was in the process of conducting a drug delivery." (Compl. ¶ 99). The driver was allegedly a "five [] time convicted drug dealer and had recently been released from New Jersey State Prison after serving a ten [] year drug distribution sentence." (Compl. ¶ 101). Plaintiff alleges that "[d]espite the successful apprehension of a known felon, Sgt. Burns' supervisors claimed that he did not [] 'call the chase into headquarters in a timely fashion.'" (Compl. ¶ 102). Further, "[d]uring the episode, [he] was attempting to contact dispatch. The episode was thirty [] seconds long: twenty-six [] of those seconds were Sgt. Burns attempting to contact dispatch and four [] of those seconds were dispatch communicating with Sgt. Burns." (Compl. ¶ 103).

Although Plaintiff does not include the dates of the following alleged events, as a result of that incident, which allegedly occurred on September 18, 2010, Internal Affairs allegedly notified Sgt. Burns that he was the target of an investigation. (Compl. ¶ 105). Plaintiff further alleges that he was "immediately" transferred from the Patrol Division to the Traffic Division and directed not to wear his uniform. (Compl. ¶ 106). The Internal Affairs Division allegedly "sent the September 18th incident to the Prosecutor's office for review and wanted Sgt. Burns to be criminally charged with endangering the welfare of the public. However, the Prosecutor's office found nothing wrong with Sgt. Burns' actions and refused to take any actions against Sgt. Burns." (Compl. ¶¶ 107-108).

Regardless, it is Plaintiff's position that he "continued to request back pay, raises, insurance reimbursement and seniority issues and sent a letter to the New Jersey Civil Service

3

Commission – Personnel and Labor Analysis Unit requesting a formal hearing to settle the aforementioned issues." (Compl. ¶ 109). Sometime in early October, 2010, Sgt. Burns was allegedly informed that "[he] was no longer a member of the PBA and had no recourse." (Compl. ¶ 110).[2]

Plaintiff asserts that he met with PBA President Officer Kobryn, PBA Treasurer Ken Maak, the City's PBA State Delegate Matt Lindquist and Lieutenant Neil Ward in or around October 2010. (Compl. ¶ 111). Plaintiff also asserts that he was told that "the reasoning behind his PBA 'ousting' was specifically his lawsuit, which he instituted and which they felt 'hurt the organization and its members as well as directly and specifically hurting Chief Kubert, [Mayor Smith] and [Officer Kobryn].'" (Compl. ¶ 111). Further, "[d]uring the above-referenced conversation, Sgt. Burns asked President Kobryn[] if the reason that he was no longer a member of the PBA was because he sued the BPD. Both President Kobryn and Mr. Lindquist responded emphatically, '[y]eah, basically.'" (Compl. ¶ 112). Subsequently, Plaintiff was allegedly informed by the State PBA representative, Kevin Lyons, that the Bayonne PBA had not paid dues on his behalf and that he was not up-to-date. (Compl. ¶ 113). Sgt. Burns also asserts that "the PBA local #7 senior representatives [Officer] Kobryn and State Delegate Lindquist were seeking to have Sgt. Burns removed as a PBA member in April 2011 and he was never reinstated prior to his (Sgt. Burns') reinstatement in August 2010." (Compl. ¶ 113).

Further, Sgt. Burns asserts that "PBA Local 7 and the BPD knew in March, April, and May that Sgt. Burns would be returning to work, while they maliciously refused to make any payments or keep him in good standing with his local union, thereby denying him the benefits entitled according to the order." (Compl. ¶ 114). "Despite that, Sgt. Burns was also informed by

---

[2] Although the Complaint does not define the term PBA, Plaintiff is likely referring to the Policemen's Benevolent Association

4

the [State PBA Representative, Mr. Lyons,] that he could not pay retroactively to cover this period of time, thereby as a result of PBA Local #7's malfeasance, Sgt. Burns was not covered under the State PBA Legal Protection Plan for the time-frame [in] which this incident occurred, causing Sgt. Burns to hire a PBA attorney at his own personal costs for legal representation." (Compl. ¶ 115) (alteration supplied). Plaintiff additionally alleges that Mr. Lyons immediately ordered Plaintiff's reinstatement. (Compl. ¶ 116). During a subsequent meeting with Plaintiff, Officer Kobryn allegedly stated: "even though we are being ordered to reinstate you, the PBA will not be paying for your legal defense fund on this incident. That's on you and we will not keep you in good standings [sic]. We will immediately start proceedings to have you immediately removed at the quickest convenience." (Compl. ¶ 117).

On November 19, 2010, Captain Nevins, Lt. Farrell and Director of Public Safety Jason O'Donnell allegedly told Plaintiff that he was being suspended immediately, without pay, pending the outcome of his departmental trial. (Compl. ¶ 119). The purported reasons for the suspension were that Plaintiff was a danger to himself and the public. (Compl. ¶ 120). Plaintiff alleges that, upon information and belief, no other officer has ever been suspended without pay without a prior departmental hearing. (Compl. ¶ 123). On February 14, 2011, Sgt. Burns allegedly received a Final Notice of Discipline by the BPD and was immediately terminated. (Compl. ¶ 128). Plaintiff alleges that "to date, [he] is effectively terminated and his termination is on appeal." (Compl. ¶ 130).

The Complaint asserts the following causes of action: (1) 42 U.S.C. § 1983 – First Amendment; (2) 42 U.S.C. § 1983 – Procedural Due Process; (3) 42 U.S.C 1983 – Equal Protection; (4) 42 U.S.C. § 1983 – *Monell* Liability; (5) "New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et. seq.* NJ Constitution"; and (6) "Retaliation in Violation of Public Policy – *Pierce v.*

*Ortho.*" (Compl.) As per a stipulation between the parties, the Court dismissed Plaintiff's claims regarding procedural due process (Count Two), equal protection (Count Three), and retaliation in violation of public policy (Count Six). (CM/ECF No. 41).

The following defendants filed motions to dismiss Plaintiff's Complaint: (1) Capt. Murphy (CM/ECF No. 28); (2) Capt. Nevins and Lt. Farrell (CM/ECF No. 29); (3) Officer Kobryn (CM/ECF No. 30); (4) Mayor Smith and Director of Public Safety Jason O'Donnell (CM/ECF No. 31); and (5) the City, Chief Kubert, and the BPD (CM/ECF No. 32).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

## III. DISCUSSION

### A. The Motions Before the Court[3]

#### a. Captain Murphy

Captain Murphy argues that this action should be dismissed as to him due to the following: (1) he is entitled to protection under the doctrine of qualified immunity; (2) Plaintiff has failed to identify a constitutional harm; (3) Plaintiff does not allege any conduct or other personal participation on the part of Captain Murphy with regard to the direct or indirect deprivation of Plaintiff's constitutional rights; (4) Plaintiff's causes of action for retaliation and violation of First Amendment rights cannot be sustained where the underlying convictions have not been reversed on direct appeal or impaired by collateral proceedings; and (5) the Complaint is barred by the doctrines of *res judicata* and collateral estoppel. (CM/ECF No. 28)

#### b. Capt. Nevins and Lt. Farrell

Capt. Nevins and Lt. Farrell (collectively "IA Defendants" or "Internal Affairs Defendants") assert that the action should be dismissed as to them because: (1) they are entitled to protection under the doctrine of qualified immunity; (2) Plaintiff has failed to identify a constitutional harm; (3) the factual allegations do not allege that the IA Defendants exercised any conduct or otherwise personally participated in the direct or indirect deprivation of the Plaintiff's Constitutional Rights; and (4) Plaintiff's causes of action for retaliation and violation of the First Amendment cannot be sustained because the underlying convictions have not been reversed on direct appeal or impaired by collateral proceedings. (CM/ECF No. 29).

---

[3] Officer Kobryn joins the motions to dismiss filed by all defense counsel. (CM/ECF No. 30).

### c. Director of Public Safety Jason O'Donnell and Mayor Smith

Defendant Mayor Smith, who is the current Mayor of the City of Bayonne and a former police officer and Director of Public Safety, and Jason O'Donnell, the current Director of Public Safety, assert that the Complaint should be dismissed in light of the following: (1) Plaintiff's claims are barred by the two-year statute of limitations applicable to claims asserted under § 1983; (2) Plaintiff's failure to allege an actual constitutional violation is fatal to his § 1983 and New Jersey Civil Rights Act claims; (3) the retaliation claim asserted under New Jersey common law does not allege a matter of public concern; (4) Plaintiff did not timely file a Notice of Tort Claim under New Jersey law with regard to his state retaliation claim; (5) Defendants are entitled to qualified immunity; (6) the Complaint is barred by the doctrines of *res judicata* and collateral estoppel, as well as New Jersey's entire controversy doctrine; and (7) the Complaint fails to meet the applicable federal pleading standard. (CM/ECF No. 31).

### d. The City, Chief Kubert, and the BPD

Finally, the City, Chief Kubert, and the BPD (collectively "City Defendants") make the following arguments in their motion to dismiss: (1) the Court should dismiss Plaintiff's time barred claims; (2) Plaintiff has failed to state a claim upon which relief can be granted; (3) *res judicata*, collateral estoppel, and New Jersey's entire controversy doctrine mandate dismissal of the Complaint; and (4) Plaintiff's retaliation claim fails as a matter of law. (CM/ECF No. 32).

### B. Plaintiff's Opposition

In opposition to the instant motion, Plaintiff argues: (1) his claims are not barred by the applicable two-year statute of limitations; (2) he has alleged constitutional claims sufficient to sustain causes of action pursuant to § 1983 and the New Jersey Civil Rights Act; and (3) *res*

8

*judicata*, collateral estoppel, and New Jersey's entire controversy doctrine are inapplicable. (CM/ECF No. 39).

### C. Statute of Limitations

As stated in the Complaint, "[t]he damages claimed in this litigation cover the period of time from [Plaintiff's] initial reinstatement, which covers the period of time from [Plaintiff's] initial wrongful termination through the period of time that the Civil Service Commission ordered [Plaintiff] back to work with full salary . . . . Damages claimed in this litigation also cover the period of time Sgt. Burns was again, wrongfully terminated on February 14, 2011." (Compl. ¶ 1). A number of the defendants argue that Plaintiff's claims are time barred, and that certain actions or events allegedly occurred as early as 1995. (*See e.g.* CM/ECF Nos. 31, 7-8; 32, 7-8). The City Defendants also argue that the continuing violations doctrine is inapplicable to this case because the Plaintiff clearly alleges discrete acts. (CM/ECF No. 32, 6). In opposition to the instant motion, Plaintiff clarifies that his "claims arise exclusively from his termination as a result of the September 18, 2010 incident. The facts referenced in the Complaint prior to that were included to provide context. Plaintiff does not seek recovery of any damages prior to his reinstatement on August 30, 2010." (Pl.'s Opp'n. 22).

Defendants may prevail on the statute of limitations at the motion to dismiss stage if it is apparent from the face of the complaint that the cause of action is barred. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citation omitted). "If the allegations, taken as true, show that relief is barred by the applicable statute of limitations, a complaint is subject to dismissal for failure to state a claim." *Cain v. Dep't of Pub. Welfare*, 442 F. App'x. 638 (3d Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1987)).

9

The applicable statute of limitations for a claim brought under § 1983 is that of a personal injury claim in the state in which the claim arises. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Under New Jersey law, a personal injury claim must be brought within two years of the date of accrual. N.J.S.A. 2A:14-2. Therefore, the statute of limitations for § 1983 claims in New Jersey is two years. *Cito*, 892 F.2d at 25; *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006). Under federal law, a § 1983 cause of action accrues when the allegedly wrongful act occurred. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("It is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when 'the plaintiff can file suit and obtain relief.'") (internal citations and alterations omitted). Similarly, the parties agree that civil rights claims brought under New Jersey's Civil Rights Act are also subject to a two-year statute of limitations. *Brown v. City of Newark*, 2010 WL 1704748, at * 4 (D.N.J. Apr. 26, 2010); *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, Civ. No. 02-5470, 2007 WL 1038920, at *3 (D.N.J. Mar. 29, 2007); *see Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 612 (D.N.J. 2010).

The instant action was filed on September 27, 2012. (CM/ECF No. 1). Plaintiff concedes that the Complaint "contains a history dating back to 1995." (Pl.'s Opp'n. 12). However, he maintains:

> it also unmistakably identifies actions by defendants taken since September 18, 2010, which form the factual basis of his claims in this lawsuit. The acts prior to September 18, 2010 are included as context and to demonstrate the personal animosity and hatred for Sgt. Burns by the individual defendants, the motives for their coordinated effort to terminate Sgt. Burns from the BPD, as a result of having filed a prior lawsuit against them and BPD as well as successfully challenging a prior termination.

(Pl.'s Opp'n. 12).

Plaintiff also contends that the statute of limitations begins to run on the date of the alleged retaliation, not the dates leading up to those events on which other incidents allegedly occurred. (Pl.'s Opp'n. 12). Plaintiff submits that "[t]he actions occurring since September 2010, include but are not limited to" to the following:

- Sgt. Burns is the subject of a retaliatory investigation by Internal Affairs as a result of incident on September 18, 2010, following his return to work;
- The transfer of Sgt. Burns from the Patrol Division to the Traffic Division;
- Sgt. Burns is precluded from wearing his uniform at work;
- BPD's referral of the September 18, 2010 incident to the Prosecutor's Office for prosecution of Sgt. Burns, which the Prosecutor's Office denied;
- Unlawful ejection of Sgt. Burns from the PBA for filing a Civil Complaint;
- Suspension of Sgt. Burns by BPD;
- Requirement that Sgt. Burns return all issued equipment prior to termination;
- BPD's refusal to pursue charges against the suspect from the September 18, 2010 incident; and
- Plaintiff's termination from the BPD on February 14, 2011

(Pl.'s Opp'n. 12-13). Accordingly, Sgt. Burns concedes that any claims which arise from the allegations of the Complaint that relate to events which occurred before September 18, 2010, are indeed time barred. However, Plaintiff asks this Court to focus on conduct which occurred as of September 18, 2010. In their Reply, the City Defendants argue that the Court should dismiss with prejudice all claims that accrued prior to September 27, 2012, the date that Plaintiff filed the instant action. (City Defs.' Reply 3; CM/ECF No. 1).

Importantly, Plaintiff does not contend that there is a basis for tolling the limitations period. Rather, from the face of the Complaint, it appears that a number of Plaintiff's claims are time barred. Indeed, in certain portions of the Complaint Plaintiff reference events as early as 1995. In other ports of the Complaint, Plaintiff does not include a date on which alleged events

11

occurred. Therefore, the Court dismisses all claims which accrued before September 27, 2012. The Court does so, however, without prejudice insofar as Plaintiff can articulate a proper basis for tolling the statute of limitations.

### D. Rule 8(a)

A number of defendants argue that Plaintiff's Complaint fails to pass muster under Federal Rule of Civil Procedure 8(a). As discussed above, the Complaint also includes a number of allegations, which the Plaintiff concedes are time barred, solely for purposes of demonstrating a history and providing context. However, the Complaint does not clearly delineate which allegations form the basis of what Plaintiff contends are his actionable claims.

In addition, a number of Defendants argue, and the Court agrees, that the Complaint "merely recites the elements as to each cause of action and fails to tether the elements to any factual predicate relevant to the actual cause of action." (CM/ECF No. 31, 26.) Indeed, each cause of action is asserted against multiple defendants. However, the Complaint does not specify which facts and which alleged actions by each defendant purportedly give rise to the specific causes of action.

The Court notes that each count of Plaintiff's Complaint contains the statement "incorporating by reference" all previous allegations. Although there may be circumstances in which it is appropriate to incorporate certain allegations by reference, there is no question that each count of a properly pled complaint *must* contain: (a) its own cause of action against a clearly identified defendant(s), and (b) those particular factual allegations that would allow the court to draw the reasonable inference that the defendant is liable for that cause of action. *See Iqbal*, 556 U.S. at 678. As currently drafted, Plaintiff's Complaint fails to meet this requirement.

*See, e.g., Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("Anderson's complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.").

To the extent Plaintiff intends to re-plead these claims, Plaintiff should assert facts showing each defendant's actual personal involvement in each of the alleged wrongs. Stated differently, Plaintiff must present sufficient facts establishing *each* defendant's liability for *each* claim asserted. *See, e.g., Schiano v. MBNA*, No. 05-1771, 2013 WL 2452681, at *7 (D.N.J. Feb. 11, 2013) (reiterating that Plaintiff must "make clear which claims were being asserted specifically against which defendants, and the specific factual basis for each claim against each defendant, as well as the specific relief being sought and the grounds for that relief"); *see generally Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x. 158, 160 (3d Cir. 2011) (holding that the district court did not abuse its discretion in dismissing complaint for failure to "provide a short and plain statement of each claim against each defendant"). Accordingly, the Complaint is dismissed without prejudice.[4]

## IV. CONCLUSION

Therefore, for the reasons set forth above, the Court finds dismissal warranted. Accordingly it grants Defendants' motions and dismisses Plaintiff's Complaint without prejudice.

An appropriate Order accompanies this Opinion.

Dated: 7-19-13

Jose L. Linares
United States District Judge

---

[4] Therefore, the Court need not reach the remainder of the Defendants' arguments.

13